UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**United States of America,**                    Criminal No. 07-315 (MJD / SRN)

      **Plaintiff,**
                                      **REPORT & RECOMMENDATION**

      v.

**Tyrone Shadale Oaks,**

      **Defendant.**

---

      Erika R. Mozangue, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for U.S.A.

      Manvir K. Atwal, 107 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Statements Admissions and Answers (Doc. No. 18). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, this Court recommends that the motion be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Defendant Tyrone Shadale Oaks has been indicted for being a felon in possession of a firearm. (Doc. No. 1.) On July 18, 2007, Officer David Palmer of the Minneapolis Park Police was engaged in a routine patrol of the area around Lake Calhoun.[1] The area had recently experienced robberies, firearm offenses and drug use. At about 1:00 a.m., Officer Palmer, who was driving a marked squad car with all of its lights off, observed a group of four individuals

---

[1] Officer Palmer appeared and testified at the October 17, 2007, hearing on this matter.

standing in the park near the northeast corner of the lake.  Park regulations prohibit such activity at such hours.  (Individuals are permitted to walk through the park at that time, but not to loiter or congregate as the individuals at issue here were doing.)

Officer Palmer approached within some 20 feet and observed one of the individuals, a female, extend her hand while another, a male later identified as Defendant, placed or retrieved what appeared to be drugs in her hand.  Apparently upon realizing the officer's presence, the group attempted to leave the scene.  Officer Palmer observed the female attempting to shove the contents of her hand into her pocket.  He also observed Defendant reach into the waistband of his pants and engage in a sideways throwing motion toward the lake.  Officer Palmer then heard a large splash that he suspected could have resulted from a heavy object such as a handgun.

Officer Palmer then exited his vehicle and instructed the group to halt.  After Defendant attempted to walk around the squad, Officer Palmer told all four to place their hands on the squad car.  The suspects having complied, the officer then pat-searched Defendant for weapons first and asked him what he threw into the lake.  Defendant answered "I threw a blunt," that is, a cigar modified to facilitate the smoking of marijuana.  Somewhat incredulous, the officer questioned this response by asking "a blunt made that big a splash?" but got no further response.

After a search of the woman suspected of hiding drugs in her pocket produced a pill and four bags of what appeared to be marijuana, the officer radioed that he had four suspects with narcotics.  Defendant then took off running.  Only then did Officer Palmer draw his weapon and instruct the remaining suspects to lie down.  Other officers soon apprehended Defendant.  A handgun was promptly discovered just offshore.  Defendant now moves to suppress his statement to Officer Palmer as to what he threw in the lake, contending that it was the result of a custodial interrogation that occurred without him having been informed of his <u>Miranda</u> rights.

**II.     DISCUSSION**

It is axiomatic that Miranda warnings are required when a defendant is subject to custodial interrogation. But "[n]o Miranda warning is necessary for persons detained for a *Terry* stop." United States v. McGauley, 786 F.2d 888, 890-91 (8th Cir. 1986). Under Terry, "[a] police officer may 'stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'''" United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995). "The officer may ask the detainee questions in order to dispel or confirm his suspicions, but questioning is limited in scope to the circumstances that justified the stop." Id. Accord Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984) ("The [Terry] stop and inquiry must be reasonably related in scope to the justification for their initiation. Typically, this means that the officer may ask the detained a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.").

Here, Officer Palmer witnessed what he suspected was a drug transaction in a public park that had recently experienced such activity. After the suspects noticed his squad and began to walk away, Officer Palmer observed Defendant throw something towards the lake and then heard a large splash indicative of something heavy such as a firearm. Accordingly, the officer possessed a reasonable suspicion supported by articulable facts to conduct a Terry stop. Moreover, the nature and extent of Officer Palmer's questioning of Defendant remained within the bounds permitted by a Terry stop. After exiting his squad, Officer Palmer–possessing a reasonable suspicion that the object Defendant discarded upon noticing the officer might have been a gun–simply asked him what he threw into the lake.

The nature of the detention does not appear to rise to the level of an arrest so as to have

required Miranda warnings.  "A suspect is in custody for purpose of *Miranda* when he is arrested or when he is 'deprived of his freedom of action in any significant way.'"  Johnson, 64 F.3d at 1125.  "Whether a suspect is in custody is determined by considering whether a reasonable person in his position would have understood the nature of his situation."  Id.  A suspect is not in custody, however, unless and until his "'freedom of action is curtailed to a 'degree associated with formal arrest.''"  Id. at 1126 (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)).

    Here, although he instructed Defendant to place his hands on the back of the squad car, Officer Palmer–the sole law enforcement official on the scene at that time–had not drawn his weapon, formally arrested Defendant, instructed him that he was not free to leave, handcuffed him, placed him in the back of the squad car, or removed him to any confined location for questioning.  See Johnson, 64 F.3d at 1126 (holding defendants were not in custody even though "they were questioned in squad cars," where they were told "that they were not under arrest," "were not handcuffed or otherwise restrained," and "were not isolated, and their passengers remained at the scene").  In addition, requiring a suspect to place his hands on the officer's squad car is, if not strictly necessary in conducting a pat-search for weapons, perhaps merely incidental to that minimal search permitted during the routine Terry stop.

    Moreover, the fact that one officer was confronted with the necessity of detaining four suspects in a public park undermines any argument that the suspect could have reasonably believed he was in custody under these circumstances.  Cf. U.S. v. Griffin, 922 F.2d 1343, 1351-52 (8th Cir. 1990) (addressing factor of whether atmosphere was "dominated by the police").  Although the question of whether Defendant was thus in custody is arguably close, the Court concludes that the detention did not rise to the level of restraint "associated with formal arrest."  Berkemer, 468 U.S. at 440.

But the Court need not rely on this conclusion because, in any event, the public safety exception to <u>Miranda</u> clearly applies. Where officers in the act of apprehending a suspect are "confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just . . . discarded," they may–without providing <u>Miranda</u> warnings–ask the suspect about the whereabouts of the gun so as to prevent an accomplice from making use of it or a member of the public from coming upon it. <u>New York v. Quarles</u>, 467 U.S. 649, 657 (1984).

Here, the officer–before making any verbal or physical contact with Defendant–observed him throw what the officer suspected to be a firearm into the lake. The lake and surrounding park are well-populated recreation areas, particularly in the summer when these events took place. The officer's questioning of defendant as to what he threw in the lake presents a clear case of needing to protect the public from the risk that a person using the park or lake–particularly a child–might stumble on a loaded firearm. <u>Cf.</u> <u>Allen v. Roe</u>, 305 F.3d 1046, 1050-51 (9th Cir. 2002) (holding that officers had "an objectively reasonable need to protect the police or the public from immediate danger" when they asked defendant about location of gun, noting that "[i]f the gun was discarded in a public place, it posed a continuing immediate danger because anyone could have found the gun at any time").

**III.   CONCLUSION**

The officer possessed an adequate basis to conduct a <u>Terry</u> stop and ask Defendant about the item the officer observed Defendant throw into the lake. The officer's conduct did not amount to placing Defendant in custody for purposes of triggering Defendant's rights under <u>Miranda</u>. In any event, the limited questioning at issue was permissible under the public safety exception.

**IV.     RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1. Defendant's motion to suppress (Doc. No. 18), be DENIED.


Dated:  October 24, 2007

       s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by November 8, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.