```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

----------------------------------------------------------------
                                      )
 United States of America,            )   File No. CR-07-315
                                      )            (MJD/SRN)
         Plaintiff,                   )
                                      )
 vs.                                  )   Minneapolis, Minnesota
                                      )   April 22, 2008
 Tyrone Shadale Oaks,                 )   10:30 a.m.
                                      )
         Defendant.                   )
                                      )
----------------------------------------------------------------

               BEFORE THE HONORABLE MICHAEL J. DAVIS
                UNITED STATES DISTRICT COURT JUDGE

                        (MOTIONS HEARING)


 APPEARANCES
   For the Plaintiff:         U.S. Attorney's Office
                              ERIKA R. MOZANGUE, AUSA
                              600 U.S. Courthouse
                              300 South Fourth Street
                              Minneapolis, Minnesota 55415

   For the Defendant:         Law Offices of Thomas H. Shiah
                              THOMAS H. SHIAH, ESQ.
                              247 Third Avenue South
                              Minneapolis, Minnesota 55415

   Court Reporter:            LORI A. SIMPSON, RMR-CRR
                              1005 U.S. Courthouse
                              300 South Fourth Street
                              Minneapolis, Minnesota 55415




      Proceedings recorded by mechanical stenography;
   transcript produced by computer.
```

1           **P R O C E E D I N G S**

2                **IN OPEN COURT**

3           THE COURT:  Let's call this matter.

4           THE CLERK:  United States of America vs. Tyrone

5   Shadale Oaks, Criminal Case No. 07-CR-135.  Counsel, will

6   you please state your appearances for the record.

7           MS. MOZANGUE:  Erika Mozangue appearing on behalf

8   of the United States.

9           THE COURT:  Good morning.

10          MS. MOZANGUE:  Good morning.

11          MR. SHIAH:  Good morning, Your Honor.  Tom Shiah

12  on behalf of Mr. Oaks, who is present.

13          THE COURT:  Mr. Shiah, it's your motion.  You may

14  proceed.

15          MR. SHIAH:  Quite frankly, Your Honor, I wasn't

16  anticipating an appearance when I filed this, but I'm happy

17  to be here.  I have not much to add.

18          The correspondence I'm referring to, there were

19  three items of correspondence that it's my understanding

20  have been submitted directly to the Court.  I have copies.

21  I'm not going to go through them chapter and verse.  I

22  disagree with what they say, suffice it to say.  I met with

23  Mr. Oaks.  We discussed that.  And I had an opportunity when

24  we were meeting with him on the presentence.  I think that

25  was last Thursday.  At that time he reiterated and said that

1   he no longer wanted me to be his attorney.
2           And I concur in that request.  I think our
3   relationship has gotten to the point where at least I cannot
4   convince him that my interests are still in his best
5   interests and I, quite frankly, am just asking to withdraw
6   at this time.
7           THE COURT:  All right.  Sir, would you step
8   forward.  What is your wish here, sir?
9           THE DEFENDANT:  I ask that I have better counsel,
10  that I have a lawyer who will represent me.
11          THE COURT:  So you understand, there is -- from
12  the correspondence that I have received from you, it would
13  not allow me or I would not grant a motion for new counsel
14  in this matter.  You can represent yourself, but there is no
15  justifiable reason for new counsel in this matter.  Just
16  because you don't like the advice of Mr. Shiah or the
17  strategy that he presented in trying the case does not give
18  you a right to have the Court appoint new counsel.
19          The issue that you've been raising with me is
20  dealing with whether or not the juvenile had a right to
21  testify.  Under federal law it's clear the juvenile would
22  have a right to testify and did testify.  That is not a
23  reason for me to discharge Mr. Shiah from this case.
24          I will discharge Mr. Shiah from the case if you
25  want him discharged, but understand that I will not be

1   appointing a new attorney to represent you in this matter.
2   You will be representing yourself.
3            THE DEFENDANT:  Representing myself meaning I
4   would have to file all of the --
5            THE COURT:  Oh, most definitely.  You make that
6   decision.
7            THE DEFENDANT:  So what --
8            THE COURT:  You're not entitled to whatever
9   attorney that you want.  You're entitled to a competent
10  attorney.  Mr. Shiah is a competent attorney.  You have
11  presented no evidence to the Court that would show that
12  there was any issue that would -- I tried this case -- that
13  would show that he was incompetent.  It's your
14  dissatisfaction of what happened with the conviction.  No
15  lawyer can guarantee or say that there's going to be a not
16  guilty verdict brought back by the jury.
17           THE DEFENDANT:  Correct.
18           THE COURT:  And so I've given -- and it's part of
19  the record all the letters that you've written to me
20  explaining your reasoning for your dissatisfaction with
21  Mr. Shiah.  You have a constitutional right to discharge him
22  and you have a right to represent yourself, but you do not
23  have a right for me to appoint someone else.
24           THE DEFENDANT:  Okay.  May I ask a question?  Me
25  representing myself, what would -- what comes with that?

1          THE COURT:  I'm sorry?
2          THE DEFENDANT:  Me representing myself, does
3    that -- what can be done?  If I said, okay, I choose to
4    represent myself because I do not want Mr. Shiah as an
5    attorney, me representing myself, what would that -- would
6    that mean anything that's been done to this point -- would
7    that mean that I would get a new trial?
8          THE COURT:  No, no, you don't get anything new.
9    We would just move on to the sentencing.
10         THE DEFENDANT:  We would just move on to the
11   sentencing.
12         THE COURT:  Right.
13         THE DEFENDANT:  Okay.  So the presentence report
14   that was done, there was things in there that Mr. Shiah said
15   he was going to challenge.  Does that mean I would be
16   obligated to challenge those?
17         THE COURT:  You would be obligated to challenge
18   it.
19         THE DEFENDANT:  Okay.  And it says that I have
20   14 days from the time that the presentence --
21         THE COURT:  Exactly.
22         THE DEFENDANT:  Does that time still --
23         THE COURT:  Exactly.  You would have the same time
24   period as a lawyer, as the court rules are.  Just because
25   you are *pro se* and representing yourself, the rules are not

1    relaxed for that.
2             THE DEFENDANT:  Okay.  I'm being held in
3    segregation to the point where I couldn't get to the law
4    library to help myself.  How would that go about?
5             THE COURT:  That's your problem.
6             THE DEFENDANT:  That's my problem?
7             THE COURT:  Yep.
8             THE DEFENDANT:  Okay.  I'd like to represent
9    myself, then.
10            THE COURT:  Hmm?
11            THE DEFENDANT:  I said I would like to represent
12   myself.
13            THE COURT:  You would what?
14            THE DEFENDANT:  I would like to represent myself.
15            MR. SHIAH:  Can we have a minute, Judge?
16            THE COURT:  Sure.
17         (Discussion off the record between
18           the defendant and defense counsel.)
19            MR. SHIAH:  Come on up here, Tyrone.  May I be
20   heard, Judge?
21            THE COURT:  Yes.
22            MR. SHIAH:  I think the record is clear that I
23   concur in his request for new counsel.  That's why I filed
24   the motion.  I understand the Court is not inclined to grant
25   that request.

1         Given the option of him representing himself, at
2    least on his behalf I would ask the Court to consider an
3    extension of time to respond to the PSI in this case.  I've
4    done that in other situations.  I think the actual date
5    required would be -- I think the letter objections were due
6    on the 22nd, if I'm not mistaken, and the position paper was
7    the 29th.  But I would request at least he be given some
8    additional time to respond to that if he wants to take this
9    task on himself, Your Honor.
10             THE COURT:  Well, has he decided whether or not he
11   wants you or not want you or --
12             THE DEFENDANT:  I do not.
13             THE COURT:  -- is he going to represent himself?
14             THE DEFENDANT:  I'll represent myself.
15             THE COURT:  All right.  How much time do you need?
16             MR. SHIAH:  I can concur with what Mr. Oaks told
17   you, that he has -- is and has been in segregation since he
18   was transferred to the Anoka County Jail and I believe the
19   procedure right now is that your lockdown -- is it 23,
20   Tyrone?
21             THE DEFENDANT:  I'm in the same unit with
22   population.
23             MR. SHIAH:  Oh, I'm sorry.
24             THE DEFENDANT:  I'm just locked down 23 hours a
25   day.  I'm given privileges, such as food.  I'm in the same

1     part of the jail, I'm not in segregation, but they consider
2     it segregation because I'm stuck in my cell 23 hours a day.
3     I get out for one hour a day and that's to take a shower and
4     use the phone.  I mean, I ask that I be allowed to use the
5     law library.  I mean, I'm still being kept in my cell.
6                It's he said, she said.  Everybody's saying, Well,
7     he said he was going to escape or we have a plan for this or
8     a plan for that.  But I haven't broken no rules at the jail.
9     It's all he say, she say.  Everybody has something to gain
10    that's saying this.  I ask that you at least allow me to use
11    the law library so that I can prepare and fight for myself.
12               They tell me that it's the marshals who are
13    saying -- they say it's nothing that I have done in the
14    jail.  They're saying it's the marshals who are saying that
15    you are an escape risk.  The marshals have reason to believe
16    that due to comments from a guy that they gave a 5K1 to.
17    These are his statements.
18               And then they say there's a couple other people at
19    this jail saying, Oh, yeah, we know him too.  He did say
20    that he was going to try to escape out of the jail.  But
21    this is all he say, she say.  I haven't done anything.  I
22    haven't broken no rules.
23               I would at least ask that you would please grant
24    me the opportunity to go to the law library to learn for
25    myself.  Maybe 30 days.  Is that asking too much?  But, I

1  mean, I don't agree with what's being going on as far as
2  with my counsel.  I can learn on my own.
3             THE COURT:  How much time do you need to respond,
4  sir?
5             THE DEFENDANT:  Could I have 30 days?  Could I
6  have more than 30 days?
7             THE COURT:  It was due when?  On the 29th?
8             MR. SHIAH:  I think the position paper may have
9  been due on the 29th.  I'm looking for --
10            THE CLERK:  The objections were the 22nd.
11            MR. SHIAH:  Letter objections were the 22nd, the
12  position paper the 29th.
13            THE CLERK:  Yep.
14            THE COURT:  Give me a 30-day date.
15            THE CLERK:  May 22nd.
16            THE COURT:  May 22nd, sir.
17            THE DEFENDANT:  May 22nd.  With that May 22nd,
18  will you look into having me out of segregation to where I
19  would be allowed to go to the law library?  Can I -- I mean,
20  if I'm not allowed to go to the law library, I find it
21  impossible to try to even start to fight for myself.
22            THE COURT:  The Court is aware of the reason why
23  you're in segregation.  The Court is not going to change the
24  designation of you being in segregation and so that's where
25  you'll be.

1    You can request from the authorities there that
2    you spend part of your hour in the library, but the
3    facilities have to allow that and figure out a way to deal
4    with that.  I'm not ordering that.  I'm not going to order
5    your change of custody status in the jail.  I won't do that.
6         THE DEFENDANT:  So that leaves me with pretty much
7    30 days to learn how to file motions as far as to challenge
8    some of the things that's being said in the presentence
9    report, that leaves me to pretty much just go figure,
10   without no type of law work, no books or anything; that's
11   what you're telling me?
12        THE COURT:  You stated it correctly.
13        THE DEFENDANT:  Okay.  And none of the issues that
14   I put in my affidavit, you're telling me, show ineffective
15   counsel?
16        THE COURT:  I don't know how many times I have to
17   say it.  You didn't have ineffective counsel.
18        THE DEFENDANT:  Okay.  I --
19        THE COURT:  And my order regarding this will spell
20   it out.  It's a situation where you're unhappy with your
21   attorney.
22        THE DEFENDANT:  Um-hmm.
23        THE COURT:  Which is fine.  You can hire an
24   attorney or you can represent yourself, but the Court does
25   not have to give you another attorney.

1          THE DEFENDANT:  Okay.
2          THE COURT:  Because you have not given the Court a
3    reason to show that the work of Mr. Shiah was inappropriate
4    or incompetent.
5          THE DEFENDANT:  The facts of --
6          THE COURT:  We could do this dance with the next
7    attorney.  He or she could come in and give you the same
8    advice and you not like that and you would want to fire them
9    and get somebody else.  It's just without any reason.  Just
10   because you don't like what they're telling you, that is not
11   a basis for the Court giving you another attorney.
12         THE DEFENDANT:  I see your point.
13         THE COURT:  Understand that every day I hear,
14   whether or not it's from civil cases or criminal cases, I
15   don't like what my attorney is telling me.  Well, is there
16   something that your attorney has done that's incompetent?
17   No.
18         In fact, I went out of my way to give you the
19   court rule dealing with the competency of a witness so you
20   would have an idea that whatever line that you think that
21   this juvenile that testified against you should not have
22   been testifying is not true.  It's just not true.
23         THE DEFENDANT:  It's not true the Government can
24   use --
25         THE COURT:  I'm sorry?

x

1       THE DEFENDANT:  I said you're saying it's not
2  true, meaning that the Government can use a minor without
3  the consent of a parent?
4       THE COURT:  Yes.
5       THE DEFENDANT:  Okay.
6       MR. SHIAH:  That (indicating) was on the table.
7  Just so you know, he put that there before you came out.
8       THE COURT:  My goodness, think about it, sir.  Any
9  sexual abuse case, any assault against a child case would
10 not need the testimony -- the consent of the parent.
11      THE DEFENDANT:  This isn't sexual at all.
12      THE COURT:  No, but think about it.  Of course
13 not.  It's even less.  It's what she saw on the day in
14 question.
15      THE DEFENDANT:  The fact that the Bloomington
16 investigation and all of that, all of that was going on, I
17 mean, there was questions and answers for everything.  In my
18 motion for discovery there was no question and answer from
19 her.  I mean, so how do we know what took place in that
20 interview?
21      THE COURT:  Well, sir, what came out in trial,
22 examination by your attorney, there was nothing that you've
23 shown me that shows that Mr. Shiah was incompetent.
24      THE DEFENDANT:  I've asked for a new trial.  I
25 didn't get a new trial.  That doesn't show that -- I mean,

1   my attorney was supposed to file for a new trial saying that
2   I lost.  Somehow that never got filed.  I was supposed to --
3   you don't -- I went to trial fighting for my life.  You
4   don't think I would want to continue to fight?
5              THE COURT:  Mr. Shiah, do you want to be heard on
6   that issue?
7              MR. SHIAH:  I didn't file the motion for a new
8   trial.  There was not an agreement to file one.  I don't
9   know -- this is part of the thing.  He says that I told him
10  one thing and I say I didn't.  I said, I don't want to get
11  into that.  I said, All of your issues are still preserved
12  for appeal.
13             THE COURT:  Right.
14             MR. SHIAH:  It is not necessary to file a motion
15  for a new trial and it's not even my practice.  I only do
16  that on rare occasions where something has happened, as in
17  the last case, where there was things that occurred
18  afterwards.  I tried to explain that to him.  I said, I
19  don't routinely file motions for a new trial.  He said I
20  told him I was going to.  I said, That's not what I
21  remember.  I told him I apologize for that, but I said, It
22  doesn't jeopardize any issue on appeal.  And I think that's
23  a correct statement.
24             THE DEFENDANT:  Can I speak?
25             THE COURT:  All right.  Anything else, sir?

```
 1              THE DEFENDANT:  Yeah.  I did ask for a new trial.
 2              THE COURT:  All right.  That still is not a reason
 3    for me to appoint a new counsel for you.  Either you have
 4    Mr. Shiah or your represent yourself.
 5              THE DEFENDANT:  I'll represent myself.
 6              THE COURT:  All right.  Anything else for the
 7    Government?
 8              MS. MOZANGUE:  No, Your Honor.  Thank you.
 9              THE COURT:  For Defense?
10              MR. SHIAH:  Nope.
11              THE COURT:  All right.  We're in adjournment.
12              (Court adjourned at 10:50 a.m.)
13                        *     *     *
14
15
16         I, Lori A. Simpson, certify that the foregoing is a
17    correct transcript from the record of proceedings in the
18    above-entitled matter.
19
20              Certified by:  s/ Lori A. Simpson
21                             Lori A. Simpson, RMR-CRR
22
23
24
25
```