```
1                 UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA
2

3    ---------------------------------------------------------

4    UNITED STATES OF AMERICA,      Criminal No.:  0:07-cr-00315

5              Plaintiff,                   TRANSCRIPT

6         vs.                                   OF

7    TYRONE SHADALE OAKS,                   PROCEEDINGS

8              Defendant.               (MOTIONS HEARING)

9    ---------------------------------------------------------

10

11

12             The above-entitled matter came on for hearing

13   before Judge Michael J. Davis, on February 15th, 2008, at the

14   United States District Courthouse, 300 South Fourth Street,

15   Minneapolis, Minnesota 55415, commencing at  approximately

16   9:35 a.m.

17

18

19                              CALIFORNIA CSR NO.:   8674

20                              ILLINOIS CSR NO.:    084-004202

21                                IOWA CSR NO.:    495

22                                RMR NO.:    065111

23

24

25
```

```
1                          APPEARANCES
2                  OFFICE OF THE UNITED STATES ATTORNEY, 300 South
3      Fourth Street, Suite 600, Minneapolis, Minnesota 55415, by
4      ERIKA R. MOZANGUE, Assistant United States Attorney, appeared
5      as counsel on behalf of Plaintiff.
6                  LAW OFFICES OF THOMAS H. SHIAH, 247 Third
7      Avenue South, Minneapolis, Minnesota 55415, by THOMAS H.
8      SHIAH, Attorney at Law, appeared as counsel on behalf of
9      Defendant.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    THE COURT:  Call this matter.
2                    CALENDAR CLERK:  United States of America
3    versus Tyrone Shadale Oaks, Criminal Case Number 07-cr-315.
4                    Counsel, please state your appearances for the
5    record.
6                    MS. MOZANGUE:  Erika Mozangue appearing for the
7    United States.
8                    THE COURT:  Good morning.
9                    MS. MOZANGUE:  Good morning.
10                   MR. SHIAH:  Good morning, your Honor.  Tom
11   Shiah on behalf of Mr. Oaks, who is obviously seated next to
12   me.
13                   THE COURT:  Good morning.
14                   THE DEFENDANT:  Good morning, sir.
15                   THE COURT:  All right.  Mr. Shiah, bring your
16   motion.
17                   MR. SHIAH:  First off, your Honor, thank you
18   for taking this on short notice.  You know that I called the
19   Court yesterday.  This is a matter that's important to us, so
20   I have filed a motion, which is pretty straightforward and
21   pretty short.  What we are requesting at this juncture, given
22   the fact that trial is scheduled for Monday, February 25th,
23   is disclosure of Jencks material.  The material that I'm
24   talking about specifically are statements of government
25   witnesses.  In this particular case, it's my understanding

1   there are at least four people involved, two of whom were
2   with Mr. Oaks on the night of his arrest.  These are people
3   we have not been able to find and/or talk to.  My
4   investigator is here and she can verify that.  But as an
5   officer of the court, we've been trying to locate them for a
6   month and we have not been successful.  The other two I'd put
7   in the category of jailhouse witnesses.  I don't know who
8   they are -- I mean, I know who they are now, they're listed
9   on the witness list -- and those people supposedly have
10  statements about my client.  Now, as I told you yesterday
11  informally -- and I'll repeat it for the record today -- we
12  were working together, Ms. Mozangue and myself, in the course
13  of trial preparation.  We had an informal understanding that
14  I would receive the Jencks material, I believe, Wednesday of
15  this week, which would be February 13th.  I got back in town
16  that night, it had not arrived in my office yet.  I had an
17  opportunity to speak with her yesterday, which would be the
18  14th, and I was advised then, for the first time, that she
19  had concerns about turning over this material at this
20  juncture.  She did recognize that she told me it was coming,
21  but like everybody else, she's entitled to change her mind.
22  She said that she had concerns, and I believe the concerns
23  are safety for these particular individuals.  It had nothing
24  to do with the merits of the particular case.  It was just a
25  question -- she said, "I don't want to turn this over because

1  I have security issues."  There is this security concern that
2  has permeated my representation of Mr. Oaks.  All we have
3  heard are anecdotal statements about things that are
4  supposedly out there -- about possible threats, about
5  possible security things.  I have not seen anything in
6  writing.  I have not seen any other evidence.  It's just
7  people telling me, "Look, we have concerns."  In effect --
8  not in effect -- in actuality, he was actually put in deep
9  segregation at the Sherburne County facility.  I know some of
10 these issues were investigated by the Marshal's office.  As I
11 said, I've been in contact with Mr. Steve -- I believe it's
12 Swensen -- about this.  They conducted an investigation.  No
13 charges have been brought.  He was back in general
14 population, where he sits today.  So my understanding, at
15 least at this juncture, if there had been some concerns, they
16 have been investigated and it's been resolved.  So I'm not
17 sure what the government's talking about.  Now, I went back
18 and looked at the law; sometimes that's a good thing,
19 sometimes that's a bad thing, especially when you deal with
20 Jencks, which is what we are.  I believe it's 18 USC 3500.
21 And I have to say that I think I am moving upstream in terms
22 of my request for early disclosure.  I read the cases last
23 night.  I mean, it says point blank -- kind of like the old
24 days -- and I tried to explain this to Mr. Oaks -- that push
25 comes to shove, I'm not even entitled to it until after the

1  person leaves the box, if we really push it to the last -- I
2  guess the nth degree.  So I'm not going to say that I have a
3  strong legal basis in the Jencks case for early disclosure,
4  except for one thing.  If the --
5              THE COURT:  You have no basis.
6              MR. SHIAH:  Well, I still think I have a bit of
7  a case, especially where there's going to be prejudice.  If,
8  in fact -- when she decides she wants to disclose it -- which
9  I believe is now three days before trial -- that we may be
10 prejudiced.  And the problem is we can't find these people.
11 We cannot find these people.  So we're not at an advantage
12 where we can go out and interview them and talk to them.
13 They have this information.  They said they were going to
14 give it to me.  I'm getting ready to go to trial and now they
15 say they don't want to give it to me.  So I guess what I'm --
16 I wanted you to expedite it.  And I think what they've agreed
17 to, if I read their papers correctly, is they're willing to
18 give it to me Friday.  I'm assuming that would be Friday of
19 next week, which would be the 21st (sic).  I'd like to get it
20 earlier.  Because I anticipate, once I get it, I may have to
21 ask for a continuance.  That's the last thing I put in my
22 motion.
23             THE COURT:  All right.  Thank you.
24             MS. MOZANGUE:  Your Honor, the government does
25 oppose Mr. Shiah's motion, to the extent that it seeks

1  immediate disclosure of Jencks material.  The basis for our
2  motion -- we had four bases for opposing that motion.  First
3  of all, there was never a formal motion made for Jencks
4  material.  This case was initially handled by Manny Atwal of
5  the public defender's office.  We went through a motions
6  hearing, we went through a submission of motions.  She never
7  filed a Jencks motion.  I did speak to Mr. Shiah, as he
8  represented to the Court.  He inquired as to Jencks material.
9  I did say to him that I would provide to him the Jencks
10 material.  After I spoke to him, I went back and looked at
11 the file.  I realized that the statements I thought he was
12 referring to had already been given to him.  After that
13 conversation, my investigator went out and located additional
14 witnesses on this case who expressed to my investigator that
15 they are quite fearful of coming into court and having to
16 testify against the defendant.  And, so, for those reasons, I
17 then told Mr. Shiah that I had great concerns about releasing
18 the additional Jencks material.  Moreover, your Honor, there
19 is no rule of law that would obligate the government to turn
20 over Jencks material -- under Rule 26.2 of the Criminal
21 Procedure, we are not obligated to turn over Jencks material
22 until after the witness has testified.
23             I have represented to the Court previously that
24 I had reason to believe that this defendant has made threats
25 against both government witnesses in this case to do them

1   harm, as well as other interested parties in this case.  And
2   for those reasons, the government feels strongly that there
3   is a security issue in this case.  And for the protection of
4   the government witnesses, as well as other interested
5   parties, we do not wish to disclose those Jencks materials at
6   this time.
7              I've also been informed that the defendant is
8   now in the general population at the Sherburne County Jail.
9   I've also been informed that he has phone privileges.  And
10  with that said, we feel that if he wants to again try to
11  threaten one of the witnesses or try to communicate to
12  someone to do something to one of those witnesses, he now has
13  the capability to do these things.  And, so, we feel strongly
14  that he does pose a threat to do harm to government witnesses
15  in this case.
16             Whatever ruling the Court makes in this case,
17  we would ask that the defense also be given the same ruling.
18  I've received their witness list and they have three
19  witnesses on their witness list who I have not received any
20  type of Jencks materials from them.  We are requesting that
21  we be given the three days to -- three days prior to trial to
22  turn over our Jencks material to the defense counsel and we
23  would ask that the Court assign them the same order.
24             MR. SHIAH:  Judge, can I just add one thing --
25  and this has to do with the legal argument -- this has to do

1    with that point about not requesting the information.  I went
2    back and looked at the pretrial motion.  And we have
3    requested statements, there was a generic request for
4    co-defendants, unindicted coconspirators.  And in this
5    particular case, at least as it relates to one individual,
6    Lisa Broadway, she was one of the individuals that was
7    arrested that night, when all four of these people were
8    starting out as a probable cause narcotics case.  So to the
9    extent that there's a statement there of an unindicted
10   coconspirator or an unindicted defendant, I think that I
11   should be entitled to that, at a minimum.
12              MS. MOZANGUE:  Your Honor, for the record, as
13   of yet, we do not have a statement from Lisa Broadway.
14              MR. SHIAH:  Well, okay.
15              THE COURT:  All right.  Anything further from
16   the government?
17              MS. MOZANGUE:  No, your Honor.  Thank you.
18              MR. SHIAH:  Your Honor, my client wants to
19   just -- excuse me one second, Judge.
20              My client wanted me to point out that with
21   respect to confidentiality, he knows who these people are and
22   we're comfortable telling the Court that.  It's not a
23   surprise.  We have a witness list.  And he's not threatened
24   anybody, nor does he intend to.  So it's not a question of
25   all of a sudden you're going to give us something and now we

1   have the Holy Grail of the identification.  All we want is
2   the substance of what they said so we can prepare for trial.
3               THE COURT:  Okay.  All right.  The government
4   has submitted to the Court that they will be giving the
5   Jencks material to -- before I do my ruling here, Mr. Shiah,
6   do you want to be heard on turning over your material to the
7   government?
8               MR. SHIAH:  I'll abide by the three days.
9               THE COURT:  All right.  The government has
10  agreed to submit to the Court by -- in answer to defendant's
11  pretrial motion, that they will turn over the Jencks material
12  three days before trial so as not to delay any progress of
13  the trial, so long as the defendant agrees to do the same.
14  The defendant has, on the record, agreed to do the same.  So
15  the Court will order that both the government and the defense
16  three days prior to trial turn over the Jencks material of
17  their witnesses to each other.  And that we will have a trial
18  on the date that has been set.  Anything further?  And,
19  Mr. Shiah, whether or not the Jencks material is turned over
20  to you -- cutting to your argument, you know who the
21  witnesses are.  You've told me that your client knows who
22  they are.  So whether or not you have the Jencks material or
23  not, whether or not you find them or not, is not going to
24  cause this Court to continue the trial.
25              MR. SHIAH:  If the government --

```
 1                    THE COURT:  You've just told me that there's no
 2    surprises.
 3                    MR. SHIAH:  No.  There's definitely --
 4                    THE COURT:  You said there's no surprises that
 5    -- what they may say and you agree with that.
 6                    MR. SHIAH:  Well, that's the surprise.  The
 7    identity is not the issue, it's what these people are going
 8    to say.  And if we can't find them to talk to them --
 9                    THE COURT:  That's not a surprise, either.
10                    MR. SHIAH:  I'll accept that.  The one thing --
11    as long as we're here today, Judge, what I'm extremely
12    concerned about -- I mean, just kind of like a heads up --
13    I'm assuming that when we come back on the 25th for trial --
14    and this is not in the way of a motion -- it probably will be
15    a motion in limine -- I'm not going to have to deal with
16    these threat issues in the course of the trial.  Because if
17    that's the case, and if the government intends in any manner,
18    shape or form to get into any possible threats of my client
19    relating to government witnesses, government personnel or
20    anything -- if it's part of the case, then I need to see what
21    it is they have.  Because right now, I have nothing.  So I
22    just want to put that on the table.  I'm assuming that's not
23    going to be part of the case we're trying, which is a felon
24    in possession of a firearm.
25                    THE COURT:  Well, as far as I know, this is a
```

1        felon in possession of a firearm case.
2                    MR. SHIAH:  Fair enough.
3                    THE COURT:  All right.  Anything further?
4                    MR. SHIAH:  No, sir.
5                    MS. MOZANGUE:  Not from the government, your
6        Honor.
7                    THE COURT:  All right.  Thank you.
8                    CALENDAR CLERK:  All rise.
9                    (Court stood in recess at approximately 9:45
10       a.m., on February 15th, 2008).
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
1      STATE OF MINNESOTA)
2                        )ss.
3      COUNTY OF HENNEPIN)
4
5              I, Ronald J. Moen, CSR, RMR, and a Notary Public in
       and for the County of Hennepin, in the State of Minnesota, do
6      hereby certify:

               That the said proceeding was taken before me as a CSR,
7      RMR, and a Notary Public at the said time and place and was
       taken down in shorthand writing by me;
8
               That said proceeding was thereafter under my direction
9      transcribed into computer-assisted transcription, and that
       the foregoing transcript constitutes a full, true and correct
10     report of the transcript of proceedings which then and there
       took place;

11             That I am a disinterested third person to the said

12     action;

13             That the cost of the original has been charged to the
       party who ordered the transcript of proceedings, and that all
14     parties who ordered copies have been charged at the same rate
       for such copies.
15
               That I reported pages 1 through 13.
16
               IN WITNESS THEREOF, I have hereto subscribed my hand
17     this 2nd day of June, 2009.

18

19                              s/Ronald J. Moen
                                RONALD J. MOEN,
20                              CSR, RMR

21

22

23

24

25
```